IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE
COMPANY, an Ohio corporation,

      Plaintiff,

vs.                                                                                    No. CIV 24-1039 JB/JFR

DENNIS MURPHY, as Personal Representative
of the Wrongful Death Estate of AVERY
COLIN JACKSON-DUNPHY, Deceased;
PATRICK ADMIRAL DUNPHY, an Individual;
DANIKA THOMPSON, an Individual; and
ANIMAL SERVICES CENTER OF THE
MESSILA VALLEY, a New Mexico limited
Liability company,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff The Cincinnati Specialty Underwriters Insurance Company's Motion for Summary Judgment, filed March 2, 2026 (Doc. 47)("MSJ"). The Court holds a hearing on April 1, 2026. See Clerk's Minutes at 1, filed April 1, 2026 (Doc. 55). The primary issue is whether Plaintiff The Cincinnati Specialty Underwriters Insurance Company's Commercial General Liability Policy (dated July 1, 2021), filed March 2, 2026 (Doc. 47-5)("Policy"), limits Cincinnati Insurance's coverage to $25,000.00 for the incident involving the death of Avery Colin Jackson-Dunphy. The Court concludes that the Policy limits Cincinnati Insurance's coverage to $25,000.00, because it is undisputed that an animal bite causes Avery's death. The Court therefore grants the MSJ.

## **FACTUAL BACKGROUND**

The Court draws its undisputed facts from Cincinnati Insurance's assertions of undisputed material in its MSJ. See MSJ ¶¶ 1-17, at 3-6. In support of the MSJ, Cincinnati Insurance submits

the following evidence: (i) Dona Ana County Police Report (dated November 30, 2021), filed March 2, 2026 (Doc. 47-1)("Police Report"); (ii) Autopsy Report (dated December 22, 2021), filed March 2, 2026 (Doc. 47-2); (iii) Danika Thompson's Responses to Plaintiff's First Request for Admission, filed March 2, 2026 (Doc. 47-3); (iv) Dennis Murphy, et al. v. Danika Thomspon, et al., Case No. D-307-CV-2023-00522, Answer, filed March 2, 2026 (Doc. 47-4); (v) Policy; (vi) Email from Animal Services Center (dated May 21, 2021), filed March 2, 2026 (Doc. 47-6); and (vii) Letter from Animal Services Center to Clinton Thacker, filed March 2, 2026 (Doc. 47-7)("Reservation of Rights").  Defendants Dennis Murphy and Patrick Admiral Dunphy do not file a response to the MSJ.  Defendant Danika Thompson files a one-sentence response but takes no position on the MSJ.  See Response to Plaintiff's Motion for Summary Judgment at 1, filed March 13, 2026 (Doc. 48)("Thompson Response").  The Thompson Response states only: "Defendant Thompson takes no position as to Plaintiff's Motion for Summary Judgment."  Thompson Response at 1.  Under D.N.M. LR-Civ 7.1(b), "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M. LR-Civ 7.1(b).  Thus, Murphy, Admiral Dunphy, and Thompson consent to the motion.

More specifically, given that the MSJ is a summary judgment motion, "[a] party opposing the motion must file a response containing a short, concise statement of the reasons in opposition to the motion with authorities."  D.N.M. LR-Civ 56.1(b).  D.N.M. LR-Civ 56.1(b) further provides, in relevant part:

> The response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M. LR-Civ 56.1(b).  By not responding to any of the facts that the MSJ specifically alleges, Murphy, Dunphy, and Thompson allow the Court to deem undisputed all the facts in the MSJ.

Only the Defendant Animal Services Center of Mesilla Valley ("Animal Services") responds in opposition, but Animal Services does not mention the facts at all.  Thus, Animal Services does not contradict specifically any of the MSJ's facts.  See April 1, 2026, Hearing Transcript at 6:23-7:25 ("April 1, 2026, Tr.")("[I]t seems that the facts alleged in the complaint that the injuries are related to the dog [bite]")(Court adds bracket material).[1]  Accordingly, no Defendants dispute any of the facts in the MSJ, and thus "[a]ll material facts set forth in [Cincinnati Insurance's] Memorandum will be deemed undisputed . . . ."  D.N.M. LR-Civ 56.1(b).

On November 22, 2021, Keven and Leslie Owens (the "Owens") have multiple dogs in their possession.  MSJ ¶ 1, at 3 (asserting this fact)(citing Police Report at 1).  On November 22, 2021, the Owens foster three dogs that Animal Services owns.  See MSJ ¶ 2, at 3 (asserting this fact)(citing Police Report at 1).  On November 22, 2021, Avery Colin Jackson-Dunphy visits the Owens' home.  See MSJ ¶ 3, at 3 (asserting this fact)(citing Police Report at 1-2).  While at the Owens' home, Avery is outside with the Owens' dogs.  See MSJ ¶ 4, at 3 (asserting this fact)(citing Police Report at 1).  One or more of the Owens' dogs bites Avery.  See MSJ ¶ 5, at 3 (asserting this fact)(citing Police Report at 1).  Avery sustains fatal injuries.  See MSJ ¶ 6, at 3 (asserting this fact)(citing Autopsy Report at 1).  The Autopsy Report states that Avery "died of multiple dog bite injuries."  MSJ ¶ 7, at 3 (asserting this fact)(citing Autopsy Report at 1).

Defendants Dennis Murphy, as personal representative of Avery's estate, and Patrick Admiral Dunphy file suit against the Owens; Danika Thomspon; Animal Services; City of Las Cruces, New Mexico; and The Board of County Commissioners of Dona Ana County, New

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Mexico, in the case titled <u>Dennis Murphy, et al. v. Danika Thomspon, et al.</u>, Case No. D-307-CV-2023-00522 (the "Underlying Case"). <u>See</u> MSJ ¶ 8, at 3 (asserting this fact). The Underlying Case alleges negligence against Animal Services, contending that it breaches a duty of care by failing to ensure the dogs are secured properly at the Owens' residence and by failing to effectively control the dogs in a situation where it would be reasonable to expect that injury would occur. <u>See</u> MSJ ¶ 9, at 3 (asserting this fact). In Thompson's Answer in the Underlying Case, she alleges crossclaims against the other defendants, including Animal Services. <u>See</u> MSJ ¶ 10, at 3-4 (asserting this fact)(citing Underlying Case Answer at 1). Thompson's crossclaims against Animal Services allege negligence and loss of consortium. <u>See</u> MSJ ¶ 10, at 3-4 (asserting this fact)(citing Underlying Case Answer at 1).

Animal Services tenders its defense in the Underlying Action to Cincinnati Insurance, seeking defense under the Policy that Cincinnati Insurance issues to Animal Services with effective dates of July 1, 2021, through July 1, 2022. <u>See</u> MSJ ¶ 11, at 4 (asserting this fact)(citing Policy at 1-5). The Policy provides general limits of $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate for "bodily injury" that an "occurrence" causes during the policy period. <u>See</u> MSJ ¶ 12, at 4 (asserting this fact)(citing Policy at 7). Attached to and forming part of the Policy is the Endorsement Form CSIA405(08/09)-A -- Exclusion -- Animal Bite With Limited Optional Converage for Cats and Dogs. <u>See</u> MSJ ¶ 13, at 4 (asserting this fact)(citing Policy at 8). The endorsement provides for a $25,000.00 sublimit of liability, subject to a $5,000.00 deductible per occurrence. <u>See</u> MSJ ¶ 14, at 4 (asserting this fact)(citing Policy at 8). The Endorsement reads as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION -- ANIMAL BITE WITH LIMITED OPTIONAL COVERAGE FOR CATS AND DOGS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.    The following exclusion is added to Paragraph **2. Exclusions of Section I -- Coverage A -- Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I -- Coverage B -- Personal and Advertising Injury Liability**:

   a.    This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" caused by or arising out of any animal bite sustained by any person or animal.

**However, Paragraph A. above does not apply if the below schedule is completed indicating limited optional coverage has been selected.**

**Schedule**
Limits of Insurance: Each Occurrence: $
Aggregate Limit: $ 50,000
Deductible: $ 5,000
Each Occurrence: $ 25,000

**B. Limits of Insurance and Deductibles**

   1.    The Limits of Insurance shown in the Declarations are replaced by the limits designated in the Schedule above with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in the Schedule fix the most we will pay in any one "occurrence" regardless of the number of:

      a.    Insureds;

      b.    Claims made or "suits" brought; or

      c.    Persons or organizations making claims or bringing "suits".

**C. Deductible Clause**
   1.    Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" that are in excess of the deductible amount stated in the Schedule. The Limits of Insurance will not be reduced by the application of such deductible amount.

   2.    We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action

- 5 -

taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

MSJ ¶ 15, at 4-6 (asserting this fact)(citing Policy at 8).

Animal Services approves of the Endorsement when purchasing the Policy.  See MSJ ¶ 16, at 6 (asserting this fact)(citing Email from Animal Services Center at 1).  On or about June 5, 2023, Cincinnati Insurance sends a letter to Animal Services accepting the tender of Animal Services' defense under a reservation of rights and advising Animal Services that the $25,000.00 sublimit of liability pursuant to the Endorsement applies to the claims that Murphy, Dunphy, and Thompson assert against Animal Services in the Underlying Action.  See MSJ ¶ 17, at 6 (asserting this fact)(citing Reservation of Rights at 1).

**PROCEDURAL BACKGROUND**

On October 11, 2024, Cincinnati Insurance files its Declaratory Relief Complaint (Doc. 1)("Complaint").  In the Complaint, Cincinnati Insurance asks that the Court declare that "any duty [Cincinnati Insurance] owes under the Policy to indemnify Defendant [Animal Services] in the Underlying Action for the damages alleged against Defendant [Animal Services] by Defendants Murphy and/or Dunphy and/or Thompson is capped at the $25,000.00 sublimit amount per Endorsement Form CSIA405(08/09)-A."  Complaint ¶ 25, at 6.

On March 2, 2026, Cincinnati Insurance files the MSJ.  See MSJ at 1.  First, Cincinnati Insurance contends that there is no genuine issue of material fact.  See MSJ at 6-7.  Second, Cincinnati Insurance argues that based on the Policy, Cincinnati Insurance is entitled to a declaration that the applicable policy limit for the claims that Murphy, Dunphy, and Thompson assert against Animal Services in the Underlying Action is $25,000.00.  See MSJ at 7.  Cincinnati Insurance asks the Court to enter an Order declaring that the Policy limits Cincinnati Insurance's coverage to $25,000.00 for Avery's incident.  Cincinnati Insurance also notes that Murphy and

Dunphy do not oppose the MSJ, while Thompson and Animal Services oppose the MSJ. See MSJ at 2.

On March 13, 2026, Defendant Danika Thompson files the Thompson Response. Thomspon takes no position as to Cincinnati Insurance's pending MSJ. See Thompson Response at 1. The Thompson Response is one sentence: "Defendant Thompson takes no position as to Plaintiff's pending Motion for Summary Judgment." Thompson Response at 1. Thompson does not controvert, dispute, or mention any fact or facts.

On March 17, 2026, Defendant Animal Services files its Response to Cincinnati Specialty Underwriters Insurance Company's Motion for Summary Judgment (Doc 50)("Animal Response"). Animal Services makes no mention of Cincinnati Insurance's statement of facts, does not specifically contradict any fact, and does not argue a factual dispute. See generally Animal Response at 1-4. Instead, Animal Services argues that the State court should determine the applicability of the dog-bite sublimit. See Animal Response at 2. Further, Animal Services contends that, no matter the outcome of this declaration action, Cincinnati Insurance has a duty to defend Animal Services in the Underlying Matter. See Animal Response at 2.

The Court holds a hearing on April 1, 2026. See Clerk's Minutes at 1. The Court begins by allowing Cincinnati Insurance to argue its MSJ. See April 1, 2026, Tr. at 3:7-10 (Court). Cincinnati Insurance argues that there is no factual dispute and that the dog bite sublimit limits Cincinnati Insurance's liability to $25,000.00 in the Underlying Action. See April 1, 2026, Tr. at 5:1-25 (Ritenour). Both Murphy and Dunphy do not object to the MSJ. See April 1, 2026, Tr. at 6:8-18 (Court, Flores). Thompson takes no position on the MSJ. See April 1, 2026, Tr. at 6:19-20 (Court, Hightower). Animal Services argues that the issue should be decided by the State court, because of notice and pleading standards. See April 1, 2026, Tr. at 7:1-25 (Cabello).

## ANALYSIS

The Court grants the MSJ.  The Court concludes that the Policy limits Cincinnati Insurance's coverage to $25,000.00.  It is undisputed that an animal bite causes Avery's death.

## I.       THE POLICY LIMITS CINCINNATI INSURANCE'S COVERAGE TO $25,000.00.

Cincinnati Insurance contends that Policy limits its coverage to $25,000.00 for the claims made in the Underlying Case.  See MSJ at 7.  According to Cincinnati Insurance, the Policy provides coverage only up to $25,000.00 per occurrence for "bodily injury arising out of any animal bite sustained by any person[.]"  MSJ at 7.  Cincinnati Insurance therefore argues that the limit of available coverage for claims regarding the bodily injury that Avery sustains as a result of dog bites is $25,000.00.  See MSJ at 7-8.  Animal Services advances no argument to dispute Cincinnati Insurance's contention.  See generally Animal Response.  Instead, Animal Services argues that this issue should be decided by the Third Judicial District Court of New Mexico.  See Animal Response at 2.  The Court agrees with Cincinnati Insurance that its coverage under the Policy is limited to $25,000.00.

Under New Mexico Law, "insurance contracts are construed by the same principles which govern the interpretation of all contracts."  Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 18, 123 N.M. 752, 945 P.2d 970, 976.  In interpreting insurance policies, courts must consider the policy as a whole.  See Weldon v. Commercial Union Assur. Co., 1985-NMSC-118, ¶ 9, 103 N.M. 522, 710 P.2d 89, 91.  "The clauses in the policy must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end."  Safeco Ins. Co. of Am., Inc. v. McKenna, 1977-NMSC-053, ¶ 18, 90 N.M. 516, 565 P.2d 1033, 1037.  "If any provisions appear questionable or ambiguous, we will first look to whether their meaning and intent is explained by other parts of the policy."  Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 20, 945 P.2d at 977.  When insurance contracts are unambiguous, courts must construe them "in their usual and ordinary sense," Slack v. Robinson, 2003-NMSC-083, ¶ 7, 134 N.M. 6, 71 P.3d 514,

517, and "enforce [them] as written," <u>Truck Ins. Exch. v. Gagnon</u>, 2001-NMCA-092, ¶ 7, 131 N.M. 151, 33 P.3d 901, 903.

The Court concludes that Cincinnati Insurance's Policy is unambiguous. The general liability under the Policy provides general limits of $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate for bodily injury caused by an occurrence during the policy period. <u>See</u> Policy at 7. The endorsement section titled "EXCLUSION -- ANIMAL BITE WITH LIMITED OPTIONAL COVERAGE FOR CATS AND DOGS," however, adds an exclusion to the Policy. Policy at 8. The exclusion states: "This insurance does not apply to 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused by or arising out of any animal bite sustained by any person or animal." Policy at 8. This exclusion applies unless the insured purchases limited optional coverage, as Animal Services buys here, in which case "the limits of Insurance shown in the Declarations are replaced by the limits designated in the Schedule above with respect to coverage provided by this endorsement." Policy at 8. The limited optional coverage provides for $25,000.00 in coverage per occurrence for bodily injury caused by or arising out of any animal bite sustained by any person or animal. <u>See</u> Policy at 8. The Policy unambiguously limits Cincinnati Insurance's coverage to $25,000.00 for each occurrence of a bodily injury that is "caused by or arising out of any animal bite." <u>See</u> Policy at 8. Animal Services makes no argument to the contrary.

The question then turns to whether it is an undisputed fact that a dog bite causes Avery's bodily injury. <u>See</u> Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Here, it is undisputed that a dog bite causes Avery's bodily injury. In addition to the Defendants not disputing this fact, several facts support the conclusion that a dog bite causes Avery's injuries. First, the Police Report states that Ms. Owns tells officers that she

does not know why the dogs attack Avery.  See Police Report at 3.  Second, the Autopsy Report states that Avery "died of multiple dog bite injuries."  Autopsy Report at 2.  Third, Thompson admits in the Request for Production that the Autopsy Report lists the cause of death as "multiple dog bite injuries."  Request for Production at 2.  Fourth, Animal Services states the following in its response: "The plain reading of the animal bite exclusion seems to apply because the alleged injuries and damages are a result of a tragic dog bite[.]"  Animal Response at 2.  Because it is undisputed that Avery's injury is caused by a dog bite, the Court concludes that the Policy limits Cincinnati Insurance's coverage to $25,000.00.  See Policy at 8.

Animal Services first argues that this Court should not decide whether the $25,000.00 limit applies, because the Complaint in the underlying matter pleads multiple theories of liability -- negligent operation of a building, failure to control the animals, and vicarious liability.  See Animal Response at 2.  That argument misses the point.  Regardless of the legal theory, the operative fact is undisputed: dog bites cause Avery's injuries.  The pleaded theories do not alter that reality or the resulting coverage analysis.  The $25,000.00 limit therefore applies.

Animal Services next concedes that all injuries derive from the dog bite, but argues that the Court should not decide that issue, because the issue is for the finder of fact in the Underlying Case.  See Animal Response at 2.  Animal Services cites to Lopez v. New Mexico Public Schools Ins. Authority, 1994-NMSC-017, ¶ 12, 870 P.2d at 211 (1994)("Lopez"), to argue that "the factual determination is not for this Court but for the court in the primary action."  Animal Response at 2.  This argument is unsound.  In Lopez, the Supreme Court of New Mexico holds that the court in the primary action should make the factual determination, because it "cannot say as a matter of law that the alleged civil rights violations arose out of the sexual misconduct."  Lopez, 1994-NMSC-017, ¶ 12, 870 P.2d at 211.  Here, by contrast, there is no such uncertainty: the parties do not dispute that a dog bite causes Avery's injuries.  There is therefore nothing for a fact finder to

resolve on this point, and <u>Lopez</u> does not apply.

Animal Services' final argument is that the State court should determine the coverage limit. <u>See</u> Animal Response at 2.  According to Animal Services, "this determination should be made by the Third Judicial District Court," because "New Mexico courts follow notice pleadings standards."  Animal Response at 2.  The Court already declines to follow this argument.  In its Memorandum Opinion and Order, filed January 23, 2026 (Doc. 45)("MOO"), the Court considers whether to abstain in favor of the State proceeding and declines to do so.  MOO at 15-17.  The Court explains that Cincinnati Insurance seeks only a legal determination -- whether the dog-bite coverage limit applies -- which does not depend on factual issues pending in State court.  <u>See</u> MOO at 15-17.  The Court adheres to that reasoning here.  It will decide the issue, and it does so in Cincinnati Insurance's favor.  The Court therefore grants the MSJ.

**IT IS ORDERED** that Plaintiff The Cincinnati Specialty Underwriters Insurance Company's Motion for Summary Judgment, filed March 2, 2026 (Doc. 47), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Megan Elizabeth Ritenour
Freeman Mathis & Gray, LLP
Scottsdale, Arizona

    *Attorneys for the Plaintiff*

Kirk Cooper
Cooper Appeals, P.L.L.C.
El Paso, Texas

-- and --

Connie J. Flores
Jessica Mendez
Flores Mendez Law
El Paso, Texas

      *Attorneys for the Defendants Dennis Murphy and Patrick Admiral Dunphy*

Elizabeth L. Hightower
Sanders Bruin Coll & Worley PA
Roswell, New Mexico

      *Attorneys for the Defendant Danika Thompson*

Benjamin J. Young
Roberto A. Cabello
Mynatt Springer, P.C.
Las Cruces, New Mexico

      *Attorneys for the Defendant Animal Services Center of the Mesilla Valley*